**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ASHLEY LYNN ANDREWS,<br><br>Defendant. | Criminal No. 4:24-cr-064<br><br><br>**DEFENDANT ANDREWS' SENTENCING MEMORANDUM AND BRIEF IN SUPPORT OF DOWNWARD VARIANCE** |

COMES NOW the Defendant ("Ms. Andrews"), by and through undersigned counsel, and hereby provides the following memorandum for sentencing in this matter:

## I. INTRODUCTION

Defendant Ashley Lynn Andrews ("Ms. Andrews") faces sentencing for Count Two – Distribution of a Mixture and Substance Containing Fentanyl Resulting in Death or Serious Injury, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).

Count Two carries a statutory maximum term of life imprisonment. There is a twenty-year mandatory minimum sentence (240 months). The Court must impose a term of at least three years of supervised release and could impose a term of supervised release as long as life. The Court may impose a fine of up to $1,000,000.00.

The final presentence investigation report (PSR) correctly identifies that there are no guideline-related objections, but some factual objections to the Offense Conduct. Neither party intends to present any evidence (save the Government's exhibit related to restitution). The Defendant does not object to the Court ordering restitution as part of her sentence. The only contested issue for the Court to decide is the appropriate sentence to be imposed.

Ms. Andrews asks the Court to consider this memorandum and brief in support of a downward variance in connection with her sentencing.

II. **EXHIBITS AND WITNESSES**

Ms. Andrews does not anticipate calling any witnesses at the sentencing hearing. The Defendant is waiting for a letter of support which may be offered and will be provided to the Government and Court (if received) prior to sentencing.

III. **BACKGROUND INFORMATION**

   a. **Ms. Andrews' Personal Background.**

Ms. Andrews had a childhood marked with tumult and abuse at the hands of her stepfather. PSR ¶ 76. Ms. Andrews was targeted due to her stepfather's knowledge that she was not his biological child. PSR ¶¶ 76, 82. The physical and verbal abuse from her stepfather increased as she reached fifth grade and she began to exhibit physical characteristics consistent with her biological father, Randy Keasey. *Id.* Ms. Andrews' stepfather, Randy Andrews, was aware of Mr. Keasey's physical attributes as he had walked in on Ms. Andrews' mother and Mr. Keasey engaged in sexual activity during a one-time extramarital affair. *Id.* It seems her stepfather began to take out his frustrations with the extramarital affair on Ms. Andrews' as she became a teenager *Id.* Ms. Andrews did not have Mr. Keasey (her biological father) as support during her childhood as her mother lied about her paternity to Mr. Keasey. *Id.* Thus, Ms. Andrews really had no supportive father figure. Further, Mr. Keasey was a problematic drinker and had unspecified mental health issues. PSR ¶ 82.

Ms. Andrews' only positive support during her childhood was her mother, although Ms. Andrews' mother witnessed the physical and mental abuse at the hands of her stepfather and did not intervene. PSR ¶¶ 76, 81. Ms. Andrews' mother also has a history of abuse of prescription

medications. PSR ¶ 81. Ms. Andrews and her mother had regular contact up until her recent incarceration; they had a "falling out" when her mother stole her property while she was incarcerated. PSR ¶ 81. Due to past history with substances and the falling out stemming from the theft of Ms. Andrews' property, her mother is no longer a healthy or positive support. PSR ¶ 81.

Ms. Andrews' basic needs were initially met during her childhood. However, at approximately the age of 10 (again approximately from the fifth grade onward), her stepfather began to withhold resources (food, clothing, etc.) from Ms. Andrews'. PSR ¶ 77. Her stepfather did not withhold resources from her siblings. *Id.* Ms. Andrews has three siblings, currently ages 40, 27 and 25. PSR ¶¶ 83–86. She also has paternal half-siblings and paternal stepsiblings but does not have any relationship with them because she did not grow up with them. PSR ¶ 86. None of her siblings have criminal history; however, her 27-year-old sister does have a history of methamphetamine use.

Ms. Andrews has an ACEs (Adverse Child Experience) score of 6 out of 10 based upon the information in the PSR.[1] ACEs are grouped into three major categories: neglect (physical and emotional), abuse (physical, emotional, and sexual), and household dysfunction (including violence against a parent, substance abuse, family history of mental illness, incarceration of family members, and divorce or separation).[2] Ms. Andrews shows trauma in all three major categories. Ms. Andrews' childhood trauma and later life trauma – a broken jaw for which she was prescribed opioids and began to abuse them—undoubtedly increased her risks of substance

---

[1] Adverse Childhood Experiences (ACE) Score (mdcalc.com) (https://www.mdcalc.com/calc/10464/adverse-childhood-experiences-ace-score#when-to-use)
[2] Violence Prevention: About the CDC-Kaiser ACE Study, CTRS. FOR DISEASE CONTROL & PREVENTION (2021), https://perma.cc/4MRD-2KHR.

abuse.  PSR ¶¶ 93, 94, 104.  Ms. Andrews' criminal history is related to abuse of controlled substances.  PSR ¶ 68, 69.  Ms. Andrews' only criminal history is comprised of two convictions for possession of controlled substances (without delivery or intent).  *Id.*  The instant offense is Ms. Andrews first charge or conviction for delivering controlled substances.  *Id.*  It is her first felony charge.  *Id.*  In sum, Ms. Andrews' adverse childhood experiences have at least partially led to her substance use, her drug-seeking behaviors, her sales of controlled substances to support her drug habits, and the general trajectory of her life experience.

   b. **Guilty Plea**

On March 19, 2025, Ms. Andrews pled guilty to Count Two of the three-count Indictment filed against her on May 14, 2024, in the Southern District of Iowa.  On April 10, 2025, the Court accepted Ms. Andrews' plea and adjudicated her guilty.  These offenses stem from Ms. Andrews' sales of heroin, fentanyl, and methamphetamine during 2023 and 2024.  Specific to this case and Count Two, Ms. Andrews sold fentanyl and methamphetamine to J.M. on or about January 4–5, 2024.  J.M. used both fentanyl and methamphetamine in the late hours of January 4, 2024, or early morning hours of January 5, 2024.  In the early morning hours of January 5, 2024 (around 6:00 a.m.) J.M.'s girlfriend (Abigail Sutherland) awoke to find him unresponsive on the floor.  Following an autopsy, it was determined that J.M. died from "combined drug toxicity of methamphetamine and fentanyl."  It was determined that, but for J.M.'s use of the fentanyl that Ms. Andrews sold him, J.M. would still be alive.  All of these actions occurred in Des Moines, Polk County, Iowa, which is in the Southern District of Iowa.  The Plea Agreement contemplates a dismissal of Counts One and Three at the time of sentencing, understanding of course that the conduct in those charges will still be considered as relevant conduct for purposes of sentencing.

      c. **<u>Ms. Andrews' future plans.</u>**

Turning to Ms. Andrews' future incarceration, Ms. Andrews hopes to engage in substance abuse treatment while incarcerated. PSR ¶ 113. She has already completed a ten-session substance abuse program while incarcerated at the Polk County Jail. PSR ¶ 112. It is true that Ms. Andrews has undergone inpatient and outpatient treatment on prior occasions in Iowa and Florida. PSR ¶¶ 108–11. Ms. Andrews saw benefit from that programming and her recent programming while in the Polk County Jail and would hope to continue her treatment when transferred to BOP custody. PSR ¶ 113. She would hope to engage in RDAP while incarcerated. She would additionally like to finish obtaining her GED and obtain employment upon release. PSR ¶ 117.

IV.    **<u>Sentencing Guidelines and Requested Sentence</u>**

The parties agree that Ms. Andrews' criminal history category is I based on 0 points and that her base offense level is 38 under USSG § 2D1.1(a)(2). The parties also agree that a 2-point enhancement applies for maintaining premises to distribute a controlled substance under USSG § 2D1.1(b)(12). The parties agree that the appropriate total offense level is 37, after all relevant reductions for acceptance of responsibility. There is a statutory mandatory minimum sentence of 240 months. With a criminal history category of I, that puts her guidelines sentence range at 240–262 months incarceration. Ms. Andrews is arguing that a downward variance be granted and her actual sentence imposed be 120 months. Ms. Andrews would note that her co-defendants (also her suppliers) received sentences of 125 months (Galtney) and 142 months (Robertson) incarceration, respectively, and their conduct was also inextricably intertwined with the actions leading to J.M.'s overdose death.

V.   **The 3553(a) factors warrant a downward variance.**

The appropriate sentence imposed by the Court should be sufficient but not greater than necessary to meet relevant sentencing objectives, which include:

1. *the nature and circumstances of the offense and history and characteristics of the defendant;*
2. *the need for the sentence imposed -*
   A. *to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;*
   B. *to afford adequate deterrence to criminal conduct;*
   C. to protect the public from further crimes of the defendant; and
   D. *to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;*
3. the kinds of sentences available;
4. the guideline sentencing range;
5. any pertinent policy statement;
6. *the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;* and
7. the need to provide restitution to any victims of the offense.

*See* 18 U.S.C. § 3553(a) (emphasis added).

There is no doubt that the offense that Ms. Andrews committed here is serious. J.M. died from a drug overdose caused by his use of fentanyl that Ms. Andrews sold him. As serious as this offense is, it does present a turning point in Ms. Andrews' life. Up to this point, Ms. Andrews' sole criminal convictions are two state misdemeanor convictions for possession of a controlled substance. To date, this is the longest Ms. Andrews has ever spent incarcerated. She ultimately spent 30 and 45 days in jail, respectively, on her prior state drug convictions. PSR ¶¶ 68, 69. Ms. Andrews has never been to prison for either state or federal criminal charges. *Id.* She has never had a felony conviction. *Id.* Ms. Andrews is only 38 years of age. PSR, p.3. She has already begun to make some of those changes as indicated in her utilization of services while incarcerated (PSR ¶ 112), and her statements to the USPO including her desire for

treatment (PSR ¶ 113).

The sentencing guidelines are but one factor that a court must consider in fashioning an appropriate sentence. *See* 18 U.S.C. § 3553(a); *Kimbrough v. United States*, 552 U.S. 85, 90 (2007). The Sentencing Reform Act instructs courts "to 'impose a sentence sufficient, but not greater than necessary,' to accomplish the goals of sentencing, including 'to reflect the seriousness of the offense,' 'to promote respect for the law,' 'to provide just punishment for the offense,' ' to afford adequate deterrence to criminal conduct' and 'to protect the public from further crimes of the defendant.'" *Id.* at 101 (quoting 18 U.S.C. § 3553(a)). To that end Ms. Andrews asks the Court to specifically consider the following factors in deciding on a sentence.

    a. **Adverse Childhood Experiences**.

Ms. Andrews' childhood is disheartening. She grew up with a father figure who physically and emotionally abused her from an early age. PSR ¶¶ 76, 82. He appeared to target her because of an extramarital affair by her mother, and a realization or knowledge that she was not his biological child. PSR ¶¶ 76, 82. Her mother watched physical and emotional abuse occur and did nothing. Id. Her father figure (stepfather – Randy Andrews) was an alcoholic, and her mother was abusing opioid medications at some point in her life. PSR ¶¶ 81, 82. Ms. Andrews was denied basic needs as time went on and she was singled out amongst her siblings. PSR ¶ 77. Ms. Andrews was working at the age of 10 to help support her basic needs because her stepfather and mother would not. *Id.* In short, Ms. Andrews had a traumatic upbringing and was subject to not only neglect, but also emotional and physical abuse at the hands of her stepfather. PSR ¶¶ 76, 77, 82. Her traumatic childhood experiences, coupled with her jaw injury from

an assault from an unknown male, surely shaped her future dependence on mind-altering substances and overuse of the same to cope with her trauma and the pain from her medical conditions.

      b. **Substance Abuse and Mental Health.**

Ms. Andrews abused alcohol and drugs at an early age. She first drank alcohol at the age of 13. PSR ¶ 101. She first used marijuana at age 15. PSR ¶ 102. She first used cocaine at age 17. PSR ¶ 103. She experimented with other drugs throughout her early adulthood. PSR ¶¶ 104–107.

The offense in the instant case involves heroin and fentanyl. Specific to those substances, Ms. Andrews' broke her jaw during an assault by an unknown male at the age of 18 (in 2005). PSR ¶ 104. She was prescribed opiates for pain management for her jaw injury. *Id.* At age 19 (in 2006), she began to abuse prescription opiates daily. *Id.* That abuse continued through age 29 (in 2016). *Id.* From 2016 to 2018 (ages 29 through 31), Ms. Andrews was sober from opiates. *Id.* In 2018 (age 31), she again began to use opiates weekly until she began to use heroin/fentanyl instead. *Id.* That transition to heroin fentanyl occurred in 2018. *Id.* She started with using heroin/fentanyl sporadically but was eventually using it daily. PSR ¶ 107. She last used fentanyl the date of her arrest. *Id.* Fentanyl is her drug of choice and the one that has caused her the most problems. *Id.* Defendant has also used methamphetamine sporadically since age 23 (in 2010).

Ms. Andrews realizes that her substance abuse is not only an addiction but also a coping mechanism and she could benefit from both substance abuse treatment and further mental health therapy. PSR ¶ 113. Ms. Andrews has had ten sessions of

substance abuse programming at the Polk County Jail voluntarily.  PSR ¶ 112.  Ms. Andrews has also been addressing her mental health issues while at the jail.  PSR ¶ 98.  Andrews underwent a mental health evaluation on October 19, 2024, and was diagnosed with adjustment insomnia, anxiety disorder, PTSD, and opioid dependence.  *Id.*  She is currently taking four medications for her mental health treatment and is taking those as prescribed.  *Id.*  She intends to continue those medications in BOP custody and any recommended mental health therapy.

Considering the childhood trauma Ms. Andrews endured during her formative years, and her lack of positive supports growing up, and her addiction to prescription opioid pills following a jaw injury at age 18, it is not surprising that Ms. Andrews turned to drugs.  Further, the story of how she began to overuse and abuse opiate prescription medications is a common theme among opiate addicts.  She had a physical trauma for which she was originally legally prescribed the medications and then her use spiraled out of control, and she turned to illicit means to obtain the street equivalent of those pills.  Ms. Andrews' eventual sales of the street drugs heroin and fentanyl were a direct result of that addiction and were used monetarily to support her drug habit.

Substance abuse underlies all of Ms. Andrews' criminal history.  The overuse of opioids has now led to a continual addiction that leads Ms. Andrews to be before the Court today.  Even when she was "caught" and given the opportunity to assist law enforcement, her need to continue to finance her drug habits overshadowed any logic or sense.  But for her addiction to opioids, she would not have committed the instant offense.  This crime was one to feed an out-of-control addiction to these pills.

Ms. Andrews has internalized her need for change and her need for meaningful

y

help with her substance-related addiction to prescription narcotic medications. This case presents her with the opportunity to hit that problem "head on." She faces a significant prison term for this offense. During that prison term, she hopes to have the opportunity to complete RDAP. Ms. Andrews has had access to treatment in the past but ultimately relapsed on the street equivalent to those pills. With the resources available during the long term of incarceration, as well as services while on supervised release, Ms. Andrews can succeed.

VI.   **CONCLUSION.**

Before the Court is a 38-year-old mother of three children. Her parental rights to her three children have been terminated and they have been adopted by their paternal grandmother[3]. She has a significant history with substance abuse and addiction to opioid prescription medications, and now to the street equivalent of those medications in the form of heroin and fentanyl. She has a minimal criminal history, and all of that history is substance abuse related. She could benefit from treatment and has already completed a ten-session substance abuse treatment program at the Polk County Jail voluntarily. She wants to obtain her GED while incarcerated. She is hopeful to get substance abuse treatment during her incarceration. She has had periods of sobriety in the past but has fallen back on substances as a coping mechanism and due to her addiction. She is before the Court for an offense that would not have occurred but for her addiction. She is worthy of punishment but also has good prospects for rehabilitation.

An appropriate sentence imposed by the Court that would be sufficient but not greater than necessary to meet relevant sentencing objectives would be <u>120 months incarceration</u> as to Count Two. This sentence would recognize the serious of this offense, provide just punishment,

---

[3] Or "suitable other" in the case of one of the children, A.B., age ten, who has a different father and is not biologically related her boyfriend's mother (the custodian).

deter future criminal conduct, provide Ms. Andrews the opportunity to seek needed educational and vocational training and substance abuse treatment while incarcerated, and avoid the unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, and specifically of her co-defendants who were the suppliers of the very drugs she is now convicted of providing to J.M. that resulted in his death. She takes full responsibility for her actions but asks for the Court to consider all relevant factors and impose a 120-month sentence of incarceration with a 3-year term of supervised release.

        RESPECTFULLY SUBMITTED,

        /s/ Nicholas A. Bailey
        Nicholas A. Bailey (AT0010682)
        BAILEY LAW FIRM, P.L.L.C.
        203 1st Avenue South, Suite A
        Altoona, IA 50009
        Phone: (515) 422-4331
        Fax: (888) 965-9614
        Email: nbaileylaw@gmail.com
        ATTORNEY FOR DEFENDANT

**PROOF OF SERVICE**

The undersigned certifies that on June 26, 2025 the foregoing instrument was served upon all parties to the above cause by:

( ) personal service                            ( ) first class mail
( ) certified mail, return receipt requested   ( ) facsimile
( ) e-mail                                     (X) electronic filing

I declare that the statements above are true to the best of my information, knowledge and belief.

/s/ Nicholas A. Bailey